Rita Darlene BROWN

v.

Kenneth R. NEAGLE, Warden, Federal Correctional Instit. Alderson, West Virginia; Ray McCrosky, Chief Correctional Supervisor Federal Correctional Instit. Alderson, West Virginia; Stephan Grzegorek, Regional Director, Bureau of Prisons, Philadelphia, Pa.; Robert King, United States Attorney, Charleston, West Virginia.

Civ. A. No. 79–5209–BK.

United States District Court,
S. D. West Virginia,
Beckley Division.

Dec. 10, 1979.

Lee H. Adler, Beckley, W. Va., Judith L. Holmes, Washington, D. C., for plaintiff.

James S. Arnold, Asst. U. S. Atty., Charleston, W. Va., for defendants.

## ORDER

DENNIS R. KNAPP, Chief Judge.

The petitioner, Rita Darlene Brown, is a federal prisoner confined at the Federal Correctional Institution (F.C.I.), Alderson, West Virginia. She is serving a 25-year sentence for bank robbery and possession of a firearm. These crimes were committed while petitioner was a member of the George Jackson Brigade.[1] The petitioner has brought this action pursuant to the provisions of 28 U.S.C. § 2243 to challenge the constitutionality of certain conditions of her confinement. A hearing was held on this matter, with the petitioner present and represented by counsel, on November 29, 1979.

■ A number of preliminary questions must be dealt with before the Court can properly discuss the meritorious issues before it. First, the petitioner has named, in addition to the warden at Alderson, three other respondents. The government has objected to the naming of Messrs. McCrosky, Grzegorek and King as respondents on the basis that they are improper parties. 28 U.S.C. § 2242 makes it clear that the only proper respondent is the official charged with custody of the petitioner. Consequently it appears to the Court that only Warden Neagle is a proper party and that the others should be dismissed from the action.

■ Secondly, the petitioner has also filed a "Motion for Temporary Restraining Order" in this matter. Given the fact that all the issues before the Court were brought out at the aforementioned hearing, such extraordinary relief is inappropriate and therefore said motion is denied.

The last preliminary question deals with the petitioner's request for relief from a past condition of confinement. In April of 1979 the petitioner was placed by prison officials in a "Close Accountability Program" (C.A.P.). At the time the program was imposed the petitioner was in the general prison population and was afforded all the privileges accorded that status. According to a prison policy statement, the purpose of the C.A.P. is:

"[t]o identify and establish close accountability of inmates where it has been determined there is a need. Inmates who would be recommended for such a program would be: 1) Escape risks, 2) Assaultive, 3) Protection cases, 4) Mental health cases (unstable, unpredictable behavior patterns), and 5) Notoriety cases."

The petitioner was placed in the program under number (5). She was considered a "notoriety" case due to her political affiliations and the escape of one John Sherman from a federal correctional facility in California. Mr. Sherman is or was a member of the George Jackson Brigade and a past associate of the petitioner. As the Court understands the program, its participants, while remaining in the general prison population, are subject to somewhat more stringent supervision. The petitioner remained in the C.A.P. until November 2, 1979.

■ After considering the facts before it, the Court is of the impression that no material issue exists with regard to Ms. Brown's placement in the C.A.P. at this time. This is due to a finding by the Court that any possible constitutional question concerning the petitioner's placement in the C.A.P. are now moot for purposes of possible habeas

---

1. There is no evidence before the Court pertaining to whether or not Ms. Brown is still a member of the George Jackson Brigade. The George Jackson Brigade is a relatively small leftist organization, the main thrust of which, according to one of the group's propaganda pieces entered as Government's Exhibit 1, is to "fight capitalism—with force of arms—here and now."

corpus relief in that the petitioner is no longer in the program. *Russell v. Henderson*, 475 F.2d 1138 (5th Cir. 1973).

The petitioner's remaining challenge deals with her present, continuing placement in administrative detention. While in administrative detention the petitioner remains locked in an 8' × 12' room in an specially secured building for some 23 hours per day. All her meals are served in the room and she leaves only for limited physical recreation. This detention also has the necessary result of precluding her participation in any of the educational or vocational programs which she was engaged in or might wish to engage in.

The evidence reveals that the petitioner was placed in administrative detention on November 2, 1979. The basis for the prison officials' decision to place the plaintiff in administrative detention was the escape of one Assata Shakur (Joanne Chesimard) from custody in New Jersey on November 2, 1979. Ms. Shakur is a member of the Black Liberation Army and at the time of her escape she was serving a sentence of life plus 35 years for the felony murder of a New Jersey State Trooper. The petitioner and Ms. Shakur met while each was housed in the maximum security unit at Alderson in 1978. The petitioner was then at Alderson pending sentencing on her bank robbery and weapons possession charge.

It would seem that the security surrounding the petitioner has had nothing to do with any conduct on her part. It is uncontroverted that the petitioner has a blemish-free record at Alderson. In fact, Warden Neagle testified that she is a "model prisoner." The escapes of Sherman and Shakur, it seems, have lead the prison administration to take increasingly stringent security measures with regard to the petitioner. When the petitioner was first placed in administrative detention, she was, apparently, told that it was for purposes of "protective custody." By the time of the hearing, it was undisputed that the rationale for her present status is that she is considered an "escape risk" due to the escapes of Sherman and Shakur and concern over a possible attempt to forcibly effect her removal from Alderson. Clearly some trepidation is warranted in that Ms. Shakur escaped with the aid of four armed persons from outside the prison where she was incarcerated. This fact, combined with the fact that F.C.I. Alderson is spread over 95 relatively secluded acres surrounded by only one fence and no perimeter patrols, can easily lead one to question Alderson's security against an armed and organized escape attempt. However, it should be apparent that a mere subjective belief that the petitioner might attempt to escape is not enough to warrant her being placed in what amounts to solitary confinement.

The evidence that the petitioner is an "escape risk" seems to be that: 1) petitioner and Shakur are friends, 2) petitioner and Sherman belong or belonged to the same organization; 3) that Shakur was also considered a model prisoner in New Jersey prior to her escape, and 4): that while petitioner and Shakur were both at Alderson they had a number (7–9) of mutual visitors.

■ It has been generally recognized that imprisonment unavoidably results in a forfeiture of certain rights and privileges commonly exercised in a free society. *Gittlemacker v. Prasse*, 428 F.2d 1 (3rd Cir. 1970). However, the loss of some rights upon lawful confinement does not mean the loss of all civil rights. *Houchins v. KQED, Inc.*, 438 U.S. 1, 98 S.Ct. 2588, 57 L.Ed.2d 553 (1978). In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court made it clear that:

> "[T]hough his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime. There is no iron curtain drawn between the Constitution and the prisons of this country. . . . [Prisoners] may not be deprived of life, liberty, or property without due process of law."

■ As a compliment to this position, it is equally clear that prison officials have wide authority to make reasonable rules

and regulations for the operation of prisons. *Gahagan v. Penn. Bd. of Probation and Parole*, 444 F.Supp. 1326 (E.D.Pa.1978). Viewed in its totality, the case law places an affirmative duty upon the courts to insure that administrative actions do not violate the fundamental rights of prisoners, however restricted those rights may be. *U. S. v. Lilly*, 576 F.2d 1240 (5th Cir. 1978).

In pertinent part the November 2 Administrative Detention Order[2] reads:

"The above-named inmate (petitioner).
.   .   .

(d) Is to be admitted to administrative detention.   .   .   .

(2) Since a serious threat exists to individual's (petitioner's) safety as perceived by staff, although person has not requested admission; referral of the necessary information will be forwarded to the I.D.C. for appropriate hearing.   .   .   .

"It is this officer's decision based on all the circumstances that Rita Brown's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security of the institution because of information rec'd from Trenton, N.J. law officials.

Therefore, Rita Brown, Reg.No. 21813–170 is to be placed in Administrative Detention until further notice."

Even a cursory reading of the order makes it apparent that no specific reason is given in the order for placing the petitioner in administrative detention. It is unclear to whom or what the petitioner "poses a serious threat" (perhaps to all the possible choices). The Court is not unmindful of the problems inherent in the administration of a penal institution the size of Alderson. The warden is responsible for the safety, as well as the continued incarceration, of the prisoners and his concerns are certainly valid. However, the petitioner has been placed in a situation which can cause permanent psychological damage, as well as physical damage. If prolonged, it may even destroy her capacity to lead a normal life after release. *Wright v. Enomoto*, 462 F.Supp. 397, 399, n. 4 (N.D.Cal.1976), Judgment Aff'd 434 U.S. 1052, 98 S.Ct. 1223, 55 L.Ed.2d 756 (1978).

The Court is placed in the difficult position of balancing the legitimate concerns of the respondent with the constitutionally guaranteed rights of the petitioner.

Under the facts before the court the respondent has shown only a tenuous link, at best, between the petitioner and the escapees. No act or omission of the petitioner has caused her loss of privileges and freedom. She is no longer allowed to attend her course in automechanics. She is restricted in every sense of the word, even within the ambit of her fellow prisoners. Before a prisoner can be confined in maximum security conditions for administrative reasons, prison officials must provide, at a minimum, procedural safeguards equivalent to those used in prison discipline cases. This is particularly so where, as here, the affected prisoner suffers a loss of liberty much more severe than that suffered by the general prison population. U.S.C.A.Const. Amend. 5, *Wright v. Enomoto*, supra. In the instant situation the respondent bears the not unweighty burden of showing the reasonableness of his actions toward the petitioner. Good faith alone will not suffice to support his actions.

After careful consideration, the Court has determined that the present placement of the petitioner is constitutionally reasonable only with certain limitations:

1. The prison officials must continue to carry the burden of justifying their actions through a monitoring of the external circumstances with regard to Sherman and Shakur;

2. The petitioner must be allowed to return to her educational and vocational courses as soon as possible;[3]

2. Administrative detention orders are forms. The underlined portions have been filled in.

3. It is the Court's opinion that the respondent could allow the petitioner to return to her automechanics course immediately even while con-

3. As agreed to by the respondent, whatever good-time credit the petitioner was receiving prior to her status change will be credited to her unless some action of hers warrants disciplinary action;

4. The respondent shall continue, as agreed upon, to reconsider the petitioner's status weekly and to issue to the petitioner a written rationale for any changes or lack of changes in her status for as long as she remains in administrative detention; [4]

5. The respondent shall insure that the petitioner is given an adequate diet, an adequate level of hygiene, a reasonable amount of physical exercise, and any medical treatment the petitioner was receiving prior to being placed in administrative detention shall continue as medically indicated;

6. The petitioner's treatment with regard to approved visitors and access to her attorneys of record in this matter shall be no different than the treatment afforded to any other prisoner in administrative detention; and

7. The respondent shall strictly adhere to the procedural guidelines discussed herein in his treatment of the prisoner.

In summary, it is the Court's opinion that the respondent's treatment of the petitioner in this matter treads the razor's edge between constitutionally permissible and impermissible action. The petitioner cannot remain in administrative detention merely on the respondent's good faith belief that she might be an "escape risk." Due process and essential fairness demand that the respondent have credible evidence upon which to base a reasonable belief that the petitioner or, in this instance, someone else intends to effect her escape.

Accordingly, it is hereby ORDERED that:

1. Respondents, McCrosky, Grzegorek and King, be dismissed as parties to this action;

2. Petitioner's motion for a temporary restraining order be denied;

3. The relief prayed for by petitioner regarding the Close Accountability Program be denied; and finally

4. The respondent strictly follow the guidelines set forth in this order regarding treatment of the petitioner.

Due to the extraordinary circumstances involved herein, the Court, in addition to ordering the aforementioned changes in the petitioner's conditions of confinement, also feels obligated to retain jurisdiction of this matter for a period of sixty (60) days from the date of this order to insure compliance on the part of the respondent.

---

fining her during the rest of the day and during the evening in administration detention.

4. The Court fully realizes that providing prisoners held in administrative detention with week-

ly written policy determinations is not the standard practice and is probably unwarranted in the usual case. However, this is obviously not a standard case.