**UNITED STATES of America, Plaintiff,**

v.

**John GOTTI, et al., Defendants.**

**No. CR–90–1051.**

United States District Court,
E.D. New York.

Jan. 18, 1991.

See also 753 F.Supp. 443, 755 F.Supp. 1157.

John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y., for U.S.

Bruce Cutler, New York City, for Gotti.

David Greenfield, New York City, for Locascio.

Gerald Shargel, New York City, for Gravano.

Michael Rosen, New York City, for Gambino.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

The defendants Gotti, Gravano and Locascio obtained the issuance of an order directing George Wigen, the Warden of the Metropolitan Correction Center ("MCC"), and the United States Attorney for the Eastern District of New York, to show cause why an order releasing the defendants or, in the alternative, modifying the conditions of their pretrial detention should not be entered. A reply affidavit was submitted by William M. Bailey, Associate Warden of the MCC, and a letter response was submitted by the United States Attorney.

The affidavits in support of the relief sought were not submitted by the defendants but by their attorneys, each of whom states that the facts contained in his affidavit are based upon his own personal knowledge, except where stated to be based upon information and belief. The affidavit of each is identical beyond stating that based upon his own observation his client is in administrative detention, each affiant states that he has been advised by his client that:

(1) he has not been provided any oral or written explanation as to why he is confined in administrative detention;

(2) he has not been given notice of or opportunity to attend any hearing related to his confinement under that status, nor has he waived his right to be present at such a hearing;

(3) he has been segregated from other pretrial detainees at the MCC;

(4) Gotti and Gravano have been segregated from Locascio and have been permitted to communicate with him only during visits by counsel or family members;

(5) he has been locked in a small cell with inadequate lighting for 23 hours each day;

(6) he has been denied access to newspapers, radio and television;

(7) he has been denied access to the exercise facilities of the MCC and as his only opportunity for recreation, has been invited to the roof of the MCC at 7:45 a.m. in freezing temperatures and in snow;

(8) he has been denied adequate access to showering facilities;

(9) he has been limited to one ten-minute telephone call each day between the hours of 8:00 a.m. and 4:00 p.m.;

(10) his one ten-minute telephone call per day has been monitored in that MCC officials listen to what he is saying even when he is speaking to his attorneys;

(11) he is required to seek special authorization days in advance to make additional phone calls, even to his attorneys.

Predicated upon those assertions, the defendants urge that their detention is unconstitutional for the following reasons:

(a) they are prevented from assisting in the conduct of their defense and are concomitantly prevented from securing effective assistance of counsel;

(b) the conditions of their confinement constitute punishment prior to an adjudication of guilty; and

(c) the Bureau of Prisons has failed to comply with the requirements of 28 C.F.R. § 541.22 thus depriving them of due process.

They request, therefore, that they be released from pretrial detention or, alternatively that the court order the modification of the conditions of their detention.

The affidavit in response submitted by William M. Bailey, the Associate Warden of the MCC, addresses the assertions by the defendants as follows:

Each defendant was served with a copy of his Administrative Detention Order on December 11, 1990 pursuant to 28 C.F.R. § 541.22. Those orders are annexed to the affidavit as Exhibits A, B and C. The Administrative Detention Order is a standard printed form which includes these lines:

It is this officer's decision based on all the circumstances that the above named inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution because *

Following the word "because" on each order appears "you are pending classification (Total Separation)."

The defendants assert, as has been indicated, that the regulations pertaining to administrative detention have not been complied with and as a consequence they have been denied due process. The relevant provisions of the regulation, 28 C.F.R. § 541.22 are:

Administrative detention is the status of confinement of an inmate in a special housing unit in a cell either by self or with other inmates which serves to remove the inmate from the general population

(a) ... The warden may place an inmate in administrative detention when the inmate is ... a new commitment pending classification. The Warden may also place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the inmate ... (3) is pending investigation or trial for a criminal act.

(b) Memorandum Detailing Reasons for Placement. The Warden shall prepare a memorandum detailing the reasons for placing an inmate in administrative detention, with a copy given to the inmate, provided institutional security is not compromised thereby. Staff shall deliver this memorandum to the inmate within 24 hours of the inmate's placement in administrative detention....

The Regulation proceeds to provide in paragraph (c) thereof for a record review within three days after placement in administrative detention; for a hearing and formal review of status after seven continuous days in administrative detention; for a record review in inmate's absence each week thereafter and for a hearing and formal review at least every thirty days. That paragraph also provides that:

Administrative Detention is to be used only for short periods of time except where an inmate needs long-term protection ..., or where there are exceptional circumstances, ordinarily tied to security or complex investigative concerns.... The SRO (Segregation Review Official) shall release an inmate from administrative detention when reasons for placement cease to exist.

It is plain that the literal language of the Regulation has been complied with insofar as the defendants were designated to administrative detention initially. That is to

say, they were newly committed and awaiting classification on December 11th when they first arrived at the MCC. (See Exhibits A, B and C to Bailey's affidavit). The court has not been given a copy of the Warden's memorandum "detailing the reasons for placing an inmate in administrative detention" required by the Regulation nor does the government dispute that such a memorandum was never issued. To the extent that the government would seek to incorporate by reference Mr. Bailey's affidavit in the Administrative Detention Orders (see transcript of hearing of January 9, 1991 at page 42, lines 15–23) (hereinafter "Tr.") the simple answer is that the Regulations required the preparation of a detailed memorandum within twenty-four hours of the administrative detention, namely, December 12, 1990. The Bailey affidavit is dated January 8, 1991.

The three day reviews are annexed to the Bailey affidavit as Exhibits D, E and F. On that form the "Reason for Placement" is merely indicated to be "T/S" without any indicated explanation as to the meaning of that symbol nor was one provided the court. As pertains to Locascio and Gravano, the forms which ask for a response to the "date inmate appeared for a special housing review," the response is "Yes." As pertains to Gotti, the date "12–18–90" appears.

On the forms on which entries are made of the weekly reviews thereafter, the "Reason for Placement" is merely indicated to be "H/S" without any indicated explanation as to the meaning of that symbol nor was one provided the court. It is also clear from an examination of that form that "H/S" was inserted for the first weekly review and continued there with only the dates for the following weeks being added.

The administrative detention orders are patently wanting insofar as each offers as the explanation for its issuance that the named defendant "poses a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution because you are pending classification (Total Separation)."—an explanation which is a non-sequitur. The symbols "T/S" and "H/S" on the Special Housing Review forms are not more enlightening.

The government asks whether it should necessarily follow that the remedy for non-compliance with the Regulations should be release to the general population of the MCC (Tr. 43). Counsel for neither side has called to the court's attention any authority furnishing the answer to the question concerning the consequences that flow from non-compliance with 28 C.F.R. § 541.22(b) or (c) nor has the court's research uncovered any.

The answer would seem to be dictated by *United States v. Montalvo–Murillo*, —— U.S. ——, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990). The question presented in that case was whether the failure to comply with the prompt hearing provision of the Bail Reform Act, 18 U.S.C. § 3142(f) required the release of a person who is a danger to the community. The Court held that it did not. "There is no presumption or general rule that for every duty imposed upon the court or the government and its prosecutors there must be some corollary punitive sanction for departures or omissions, even if negligent." The Court went on to allude to the "great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided." 110 S.Ct. at 2077. "[T]here is no reason to bestow upon the defendant a windfall and to visit upon the Government and the citizens a severe penalty by mandating release of possibly dangerous defendants every time some deviation from the strictures of § 3142(f) occurs." 110 S.Ct. at 2079.

Paragraph 6 of Associate Warden Bailey's affidavit provides the reasons for the placement of the defendants in administrative detention, ostensibly in lieu of the memorandum which should have been prepared and delivered to the defendants within twenty-four hours of their placement as has previously been indicated. He states:

> These inmates were designated to Administrative Detention based upon the violent nature of the charges against them and concern as to the safety of

other individuals within this facility. In addition, because of the nature of the obstruction of justice charges, which included allegations of witness tampering, there was also concern that these inmates posed a significant risk of intimidation or tampering with other inmates at this institution who are or might be perceived to be cooperating with the government.

When asked by the court whether that risk couldn't be obviated by transferring those would-be witnesses (who must surely be known to the government) the response was, in essence, that as "the leadership of the Gambinos" they may threaten and intimidate not only those perceived to be witnesses against them but also those who are perceived to be witnesses against any member of the Gambino family who may be awaiting trial (Tr. pp. 29–30). The fallacy of that response which the court perceives becomes apparent when the relevant statute is kept clearly in mind.

The court determined at a detention hearing pursuant to 18 U.S.C. § 3142(f) that the government established by evidence that was clear and convincing that "no condition or combination of conditions will reasonably *assure the safety of any other person and the community.*" (Emphasis added.) 18 U.S.C. § 3142(f)(2)(B). When the court ordered the pretrial detention of the defendants it sought to obey the Congressional mandate which it understood to mean to protect any person *in the community.* The "community" intended by Congress when it enacted the Bail Reform Act was not the prison community. That understanding of § 3142(f) is implicitly reflected in a variety of references, of which two will suffice. For example, in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) at 750, 107 S.Ct. at 2103: "Congress specifically found that these individuals are far more likely to be responsible for dangerous acts *in the community after arrest.*" (Emphasis supplied.) And in *United States v. Montalvo–Murillo,* —— U.S. ——, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990) the Court said 110 S.Ct. at 2078: "The end of exacting compliance with the letter of § 3142(f) cannot justify the means

of exposing the *public* to an increased likelihood of violent crime." (Emphasis supplied.) The statute was not intended to protect a person in the very place in which the defendant was to be detained. In directing the detention of these defendants in the MCC, it was not the population at the MCC I was contemplating protecting. Their continued placement in administrative detention, however, is for just that reason.

It is important to remember in this regard not only the purpose for which the defendants were ordered detained but the classification of such detention for purposes of legal analysis. The Court in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) clearly announced at page 746, 107 S.Ct. at 2101 that "pretrial detention under the Bail Reform Act is regulatory, not penal...." And again, at page 747, 107 S.Ct. at 2101. "We conclude that the detention imposed by the Act falls on the regulatory side of the dichotomy."

The argument may be made that the judicial officer's intention notwithstanding, having passed through the gates of the detention facility, the pretrial detainee is bound by considerations of effective facility management. Indeed, *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) so decides. "Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." 441 U.S. at 537, 99 S.Ct. at 1873 (1979). And at 441 U.S. at 540, 99 S.Ct. at 1874–75: "... the effective management of the detention facility once the individual is confined is a valid objective that may justify the imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." Thus, the pretrial defendant, whose detention was initially regulatory, may now be subjected to the imposition of conditions and restrictions (in this case for the benefit of other detainees) with any inference that those restrictions are punishment, dispelled. As applied to the facts

before me, this is reminiscent of Alice who, having read Jabberwocky with the aid of a mirror, remarked: "It seems very pretty ... but it's rather hard to understand! ... Somehow it seems to fill my head with ideas—only I don't exactly know what they are!" Carroll, *Through the Looking Glass*, Ch. 1. That is not to say that given a pretrial detainee who is assaultive or who by some act of commission or omission presents a serious threat to life, property, self, staff, other inmates, or to the security or orderly running of the institution, conditions or restrictions of pretrial confinement may not properly be imposed.

The foregoing notwithstanding, I am nevertheless obliged to obey the teaching of *Bell v. Wolfish* which is that I "must decide whether the disability" (here, administrative detention) "is imposed for the purpose of punishment or whether it is but an incident of some other legitimate purpose.... Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination will generally turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it and whether it appears excessive in relation to the alternative purpose assigned [to it].'" 441 U.S. at 538, 99 S.Ct. at 1873–74.

The essence of the issue before me is whether it is enough to justify placing a pretrial detainee in administrative detention for a stated reason without providing any basis for the reason. The cases are legion which caution that courts must give due deference to the expertise of corrections officials in operating their institutions in a manageable fashion. But surely due deference does not mean blind deference. If it were otherwise, then any statement of reason offered by a correction official, whether well-founded or not, would justify the imposition of any condition or restriction of confinement and leave the detainee completely vulnerable to arbitrary governmental action. "Prison authorities are not afforded unbridled discretion" because the detainee is either notorious or newsworthy or both. *Boudin v. Thomas*, 533 F.Supp. 786, 791 (S.D.N.Y.1982).

Upon that premise, I examine the reasons offered by the MCC for the administrative detention of these defendants. As has already been indicated, that was initially said to be "pending classification." That reason can no longer be valid more than a month after their arrival at MCC. The affidavit of Associate Warden Bailey advancing the reason that there are inmates at the MCC "who are or might be perceived to be cooperating with the government" is predicated upon the subjective belief of the correction official as to what may be in the minds of the defendants. I am mindful in this regard, of the following observation in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) at page 474, 103 S.Ct. at page 872–73 to the effect that: "In the volatile atmosphere of a prison, an inmate easily may constitute an unacceptable threat to the safety of other prisoners and guards even if he himself has committed no misconduct; rumor, reputation, and even more imponderable factors may suffice to spark potentially disastrous incidents. The judgment of prison officials in this context, ... turns largely on 'purely *subjective* evaluations and on predictions of future behavior.'" (Emphasis supplied.) A literal reading of that observation coupled with the oft-repeated principle that due deference must be given to the decisions of the jailer, would indeed leave the detainee vulnerable to arbitrary governmental action unless it could be established that the subjective evaluation of the jailer was made in bad faith—a virtually impossible task. Research has not uncovered a case in which a jailer's subjective belief of what was in a detainee's mind, without more, was deemed to be a sufficient basis for placing the detainee in administrative detention. *See, e.g., Brown v. Neagle*, 486 F.Supp. 364 (S.D.W.Va.1979).

As this opinion was being written, the government submitted the thirty day Special Housing Review which concluded that "Continued placement in A/D status is warranted based on the nature of the current charges including multiple murders, conspiracy and solicitation to murder and obstruction of justice which includes allega-

tions of witness tampering." The inevitable and erroneous conclusion to be reached from that stated reason is that every defendant indicted for murder or witness tampering should be placed in administrative detention.

The court is inclined to agree with the government's view as to an evidentiary hearing. The Assistant United States Attorney expressed the view that he didn't believe any evidentiary hearing was necessary. "You have sworn statements from both sides as to what they say the facts are", he said. "I don't think bringing Mr. Bailey in here to say what he has already said in great detail accomplishes anything." (Tr. 34–35.)

There has been no showing that the officials of the MCC have an expressed intent to punish. For the reasons discussed and because since the defendants have been in custody they have committed no act or omission which suggests that they pose "a serious threat to life, property, self, staff, or other inmates, or to the security or orderly running of the institution" the restriction imposed is exaggerated and "excessive in relation to the alternative purpose assigned to it" *Bell v. Wolfish*, at 538, 99 S.Ct. at 1873–74 and, I conclude, is punitive and not regulatory.

No claim has been made that this proceeding is not properly before this court for the reason that the defendants have not exhausted their administrative remedies. The Bureau of Prisons has established procedures through which a federal prisoner may obtain formal review and seek redress for any complaint which "relates to any aspect of his imprisonment. . . ." 28 C.F.R. § 542.10. "A federal prisoner alleging constitutional claims as a basis for . . . relief is not generally exempt from exhausting federal administrative remedies." *Johnpoll v. Thornburgh*, 898 F.2d 849 (2d Cir.1990). Administrative remedies need not be exhausted, however, if the administrative remedies would be futile, if the actions of the agency violate constitutional rights or are otherwise not reasonably available. In addition, the exhaustion requirement may be deemed inappropriate for a pretrial detainee. *See Lyons v. U.S. Marshals*, 840 F.2d 202 (3rd Cir.1988). Some, if not all of the reasons for excusing exhaustion of administrative remedies are present here.

In the light of the foregoing, the conditions of pretrial confinement imposed upon these defendants, namely, administrative detention, is hereby modified and the Warden of the MCC is hereby directed to release the defendants Gotti, Gravano and Locascio from administrative detention. As has been heretofore indicated, the Warden is not precluded from imposing such conditions or restrictions and for such legitimate purpose as he may deem appropriate, in the future. The imposition of conditions or restrictions, if any, should be in accordance with the provisions of 28 C.F.R. § 541.22, more particularly, paragraph (b) thereof, and should reflect the alternative purpose assigned to the restriction and to which it may rationally be connected. *See* 441 U.S. at 538, 99 S.Ct. at 1873–74.

This determination makes it unnecessary to decide whether the other conditions of confinement of which the defendants complained interfere with their "understandable desire to live as comfortably as possible and with as little restraint as possible during confinement" and "are nothing more than conditions of detention rather than punishment." 441 U.S. at 537, 99 S.Ct. at 1873.

SO ORDERED.