**UNITED STATES of America,**

v.

**Shaheed KHAN, Defendant.**

**No. 06–cr–255 (DLI).**

United States District Court, E.D. New York.

June 28, 2007.

See also --- F.Supp.2d ----.

Berit Winge Berger, James Patrick Loonam, Paige Michaela Petersen, Shannon Cassandra Jones, United States Attorneys Office, Brooklyn, NY, for United States of America.

John E. Bergendahl, Miami, FL, Robert M. Simels, Robert M. Simels, P.C., New York, NY, for Defendant.

## MEMORANDUM AND ORDER

DORA L. IRIZARRY, District Judge.

Defendant Shaheed Khan ("Defendant" or "Khan"), an inmate in the Metropolitan Correctional Center in New York (the "MCC"), seeks an order from this court releasing him from administrative deten-

tion in the Special Housing Unit (the "SHU") of the MCC into general prison population housing ("general population"). The government opposes Defendant's request. For the reasons set forth below, Defendant's motion is denied.

## I. Background

Defendant is charged with multiple counts of distribution, importation, and possession of cocaine and engaging as a principal administrator, organizer, and leader of a continuing criminal enterprise in the Eastern District of New York and elsewhere, from which activities Defendant obtained substantial income and resources.[1] On June 30, 2006, United States Magistrate Judge Roanne L. Mann issued an order of detention pending trial, on the ground that Defendant presented no credible sureties to assure his appearance. At a hearing held on January 16, 2007, this court further denied bail, affirming that no condition or combination of conditions would reasonably assure the presence of Defendant at future proceedings. This court's decision ordering Defendant's pretrial detention was affirmed by the Second Circuit Court of Appeals on April 5, 2007. *U.S. v. Khan,* 228 Fed.Appx. 31, 2007 U.S.App. LEXIS 8773 (2d Cir. Apr. 5, 2007).

Beginning June 30, 2006, Defendant was detained at the Nassau County Jail in East Meadow, New York. (Khan Affidavit ("Aff.") ¶ 3.) From the period of January 18 to 23, 2007, corrections officials restricted Defendant to his cell. (*Id.* ¶ 4.) On January 23, Defendant was transferred to the MCC. (*Id.* ¶ 5; Elisa Mason ("Mason") Affirmation ("Affirm.") ¶ 4.) The acting warden at the MCC made a determination that Defendant should be

---

1. Defendant is charged with violations of Title 18 of the United States Code sections 2 and 3551 *et seq.,* and Title 21 of the United States Code sections 841(a), 841(b), 846, 848(b), 848(c), 952(a), 959(a), 969(c), 960(a), 960(b), and 963.

placed in administrative detention, in the SHU, based on reported security concerns.[2] (Mason Affirm. ¶¶ 5–6.) Accordingly, an Administrative Detention Order ("ADO") was prepared, stating that Defendant was "BEING PLACED IN ADMINISTRATIVE DETENTION PENDING AN INTELLIGENCE REVIEW DUE TO SECURITY CONCERN[S]." (*Id.* ¶ 8; Attachment ("Attach.") B to Mason Affirm.) The government attests that Defendant was served with the ADO on January 23. (Mason Affirm. ¶ 9.) Defendant contends that he did not receive a copy of the ADO until March 1. (Khan Aff. ¶ 6; Reply Affirm. ¶¶ 10–11.)

Corrections personnel reviewed Defendant's administrative detention status on January 25, 2007. (Mason Affirm. ¶ 10; Attach. C to Mason Affirm.) In addition, the segregation review officer has conducted weekly reviews of Defendant's status. (Mason Affirm. ¶ 11; Attach. C to Mason Affirm.) The government states that Defendant received a psychiatric review on February 2, 2007, but Defendant asserts that he has not been evaluated by a psychologist or psychiatrist since his arrival at the MCC. (Mason Affirm. ¶ 12; Khan Aff. ¶ 21.)

Defendant claims that he asked various corrections personnel numerous times why he was housed in the SHU rather than general population without receiving an answer to his question. (Khan ¶¶ 6, 9, 13.) Defendant further alleges that, starting sometime between January 23 to 29 until February 13, a span of two-to-three weeks, he submitted over eighteen "written inmate request forms," which he identifies as forms bearing the number "BP–A148.055," inquiring why he was placed in the SHU.[3] (*Id.* ¶¶ 7–8, 10–11, 14.) He asserts that he never received a response to his written inquiries. (*Id.* ¶ 15.) Hector Suarez, Defendant's case manager, however, attests that Defendant sent him just two "Request to Staff forms regarding housing issues" but that "neither form presented grievances about [Defendant's] placement in SHU." (Suarez Decl. ¶ 3.) Suarez further states that, to his knowledge, Khan "never requested a formal grievance regarding his housing status." (*Id.* ¶ 4.)

Having received no response to his alleged oral and written complaints, Defendant filed the instant motion for release from administrative detention on February 19, 2007. At a status conference held before this court on February 26, 2007, the court observed that the Bureau of Prison's response to Defendant's oral and written complaints appeared unduly delayed. (2/26/2006 Status Conference ("Conf.") Transcript ("Tr.") at 5:5–11.[4]) Accordingly, the court directed the Bureau of Prisons to provide Defendant with a "BP–9" grievance form without further delay. (*Id.* at 6:3–11, 19:14–15.) Suarez provided Defendant with a "BP–8" form on February 27 as a requisite precursor to the BP–9 form. (Khan Aff. ¶ 16.; Suarez Decl. ¶ 4.) Defendant submitted his completed BP–8 form either that or the following day and, on March 1, received a written response stating that he was "under administrative

---

**2.** The Government has provided details regarding the reported security concerns in a letter submitted *ex parte* and under seal for security reasons. Upon review and careful consideration of the government's *ex parte* submission, this court, for the confidential security reasons articulated in the submission, granted the government's application to file its letter under seal and to not disclose its contents to the Defendant.

**3.** By this court's calculation based on Defendant's affidavit, it appears that Defendant, if his facts are accepted as true, could not have submitted more than about twelve forms. (*See* Khan Aff. ¶¶ 7–8, 10–11; 14.)

**4.** "5:5–11" refers to page five, lines five through eleven of the transcript.

detention pending an intelligence review" and that his "status [would] continue to be reviewed on a weekly basis." (Khan Aff. ¶¶ 17–18; Suarez Decl. ¶ 4; Reply Affirm. Exh. B.) At that time, Suarez gave Defendant a BP-9 form, which Defendant completed and submitted on March 6. (Khan Aff. ¶¶ 18–19; Reply Affirm. Exh. B.) As of March 13, 2007, the date of filing of Defendant's Reply Affirmation for the instant motion, Defendant was apparently still awaiting a response. (*See* Khan Aff. ¶ 19.)

At a status conference held before this court on April 12, 2007, the court orally denied Defendant's motion for release from administrative detention, stating that the instant written decision would follow.

## II. Discussion

### A. Exhaustion of Administrative Remedies

■ Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1979 of the Revised Statutes of the United States (42 U.S.C.1983) or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (2007). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life." *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Furthermore, "the exhaustion of administrative remedies must be *proper*—that is, in compliance with a prison grievance program's deadlines and other critical procedural rules—in order to suffice." *George v. Morrisson–Warden,* 06 Civ. 3188(SAS), 2007 WL 1686321, *2, 2007 U.S. Dist. LEXIS 42640, at *10 (S.D.N.Y. June 11, 2007). Accordingly, this court must dismiss inmate actions concerning prison life where an inmate has failed to exhaust all available administrative remedies. *See Porter,* 534 U.S. at 524, 122 S.Ct. 983 ("[E]xhaustion in cases covered by § 1997e(a) is now mandatory."); *George,* 2007 WL 1686321, *2, 2007 U.S. Dist. LEXIS 42640, at * 10 ("Failure to exhaust is an absolute bar to an inmate's action in federal court."); *Baez v. Parks,* 02 Civ. 5821(PKC)(DF), 2004 WL 1052779, *4, 2004 U.S. Dist. LEXIS 8182, at * 14 (S.D.N.Y. May 11, 2004) ("[D]ismissal on the basis of a failure to exhaust is mandatory.")

■ To appropriately exhaust administrative remedies, an inmate must follow a multi-level grievance procedure established by the Bureau of Prison's Administrative Remedy Program. *See* 28 C.F.R. §§ 542.10–542.19 (2007); *see also Thomas v. Craig,* No. 05–cv–1416 (DEP), 2007 WL 836870, *1 n. 2, 2007 U.S. Dist. LEXIS 18346, at *3 n. 2 (N.D.N.Y. Mar. 15, 2007). First, the inmate must initiate informal resolution by filing a "BP–8" form. 28 C.F.R. § 542.13(a); *see also George,* 2007 WL 1686321, *3 n. 41, 2007 U.S. Dist. LEXIS 42640, at * 11 n. 41. Second, should informal resolution prove unsuccessful and the inmate wishes to pursue the claim, he or she may then file a formal written complaint on a "BP–9" form within twenty calendar days of the date of the occurrence on which the complaint is based. 28 C.F.R. § 542.14(a). Third, if the inmate is not satisfied with the response, he or she may submit an appeal on a "BP–10" form to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. *Id.* § 542.15(a). Fourth, if the inmate wishes to appeal the Regional Director's decision, he or she may appeal to the Office of General Counsel, Washington, D.C., on a "BP–11" form. *Id.* This last step is the final administrative appeal. *Id.*

By Defendant's own admission, he has not exhausted his administrative remedies. Defendant submitted a BP–8 form, on February 27 or 28, 2007. He was provided, on March 1, with a BP–9 form, which he filed on March 6. While awaiting a response, Defendant filed the instant motion. Accordingly, unless Defendant qualifies for an exemption or exception from the exhaustion requirement, the court must dismiss this action.

## B. Exemption from the Exhaustion Requirement

 Defendant claims he is exempt from the exhaustion requirement because it does not apply to pretrial detainees challenging detention in a criminal proceeding. Defendant's argument is unavailing. The Supreme Court, in holding that the PLRA's exhaustion requirement applies to "all inmate suits about prison life," did not distinguish between pretrial and post-trial

detainees.[5] *See Porter,* 534 U.S. at 532, 122 S.Ct. 983; *see also George,* 2007 WL 1686321, 2007 U.S. Dist. LEXIS 42640 (granting the defendants' motion to dismiss pretrial MCC detainee's action due to his failure to exhaust his administrative remedies). Moreover, although the PLRA's statutory exhaustion requirement does not apply to habeas corpus actions, this court notes, first, that Defendant did not file his application as a habeas petition and, second, that, even if this court were to construe Defendant's application as a habeas petition, Defendant would still be subject to judicial exhaustion requirements for habeas petitions, which, coming full circle, require exhaustion of all administrative remedies. *See Carmona v. U.S. Bureau of Prisons,* 243 F.3d 629, 634 (2d Cir.2001) (stating that, absent a showing of cause and prejudice, "federal prisoners must exhaust their administrative remedies prior to filing a petition for habeas

**5.** Defendant cites to two non-controlling cases in support of his proposition that the exhaustion requirement does not apply to pretrial detainees: *Lyons v. U.S. Marshals,* 840 F.2d 202 (3rd Cir.1988) and *U.S. v. Felipe,* 94 Cr. 395(JSM), 96 Civ. 3325(LMM), 1996 WL 409181, 1996 U.S. Dist. LEXIS 10239 (S.D.N.Y. July 19, 1996). *Lyons* is inapposite to the instant case because *Lyons* involved an action brought by an inmate who exerted great effort to avail himself of the administrative remedy process but whose efforts may have been deliberately thwarted by prison administrators. *See Lyons,* 840 F.2d at 203, 205–06. The inmate in *Lyons* claimed that prison administrators made the "BP" complaint and appeals forms nearly impossible to obtain and, furthermore, may have instituted a transfer of the inmate in retaliation for his complaints and lawsuit. *Id.* The court remanded the case to the district court for further proceedings to determine whether an exhaustion exception applied. *Id.* at 207. While the *Lyons* court did offer the short-lived status of pretrial detainees as one of several reasons for possible exemption from the exhaustion requirement, this court's view is that the *Lyons* decision, in effect, rested on the futility of the administrative appeals process

for that defendant. *See id.* at 205–06. In *Felipe,* the court there considered the petitioner's request for release from administrative detention despite his failure to exhaust his administrative remedies because one other court apparently did and because the warden provided a substantial record that the court would be able to review. *Felipe,* 1996 WL 409181, **10–11, 1996 U.S. Dist. LEXIS 10239, at *10–11. Here, there is no such record for the court to review. This court would therefore be considering the issues in the first instance-a situation defeating an important purpose of the exhaustion requirement, which is to enable those best situated to review and fully consider an inmate's complaint before making a determination, and to provide a complete record for review. *See id.,* 1996 WL 409181, *3, 1996 U.S. Dist. LEXIS 10239 at *8 (citing *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992)). In any event, since both *Lyons* and *Felipe* were decided, the Supreme Court issued *Porter* in 2002, applying the exhaustion requirement, as quoted above, to *"all* inmate suits about prison life." *See Porter,* 534 U.S. at 532, 122 S.Ct. 983 (emphasis added).

relief"); *U.S. v. Basciano*, 369 F.Supp.2d 344, 348 (E.D.N.Y.2005) (holding that, although the PLRA's statutory exhaustion requirement does not apply to habeas petitions, "judicial exhaustion requirements that govern habeas proceedings still have force"). Accordingly, "a prisoner seeking to alter the conditions of his confinement must exhaust the administrative remedies provided by the Bureau of Prisons prior to seeking the court's intervention on his behalf." *Basciano*, 369 F.Supp.2d at 348. Defendant, therefore, is not exempt from the requirement that he must exhaust his administrative remedies.

### C. Excuse from the Exhaustion Requirement

■ A court may, however, excuse the exhaustion requirement if a petitioner demonstrates that pursuing appeals through the administrative process would be futile or that the appeals process is inadequate to prevent irreparable harm to the petitioner, or if the government fails to raise its non-exhaustion defense in a timely manner. *Basciano*, 369 F.Supp.2d at 348 (citations omitted). In addition, "[f]inality and exhaustion requirements may be dispensed with ... where [an] agency has very clearly violated an important constitutional or statutory right." *Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs*, 714 F.2d 163, 168–69 (D.C.Cir.1983); *see also Westheimer v. Commodity Exch., Inc.*, 651 F.Supp. 364, 368 (S.D.N.Y.1987) (requiring "extreme circumstances ... to justify application of an exception to the exhaustion doctrine, such as an agency's clear violation of a constitutional right or specific statutory provision, or an agency's action in gross excess of its power").

Here, the government's non-exhaustion defense was timely raised, and Defendant has not alleged that the Bureau of Prisons' Administrative Remedy Program is inadequate to prevent irreparable harm. Defendant does, however, claim that adminis-

trative appeal would be futile and that his detention constitutes a due process violation.

### 1. Futility

■ Defendant challenges the administrative appeals process as futile because the reason for his detention has not been specifically articulated to him. Defendant has simply been informed that he was placed in the SHU "under administrative detention pending an intelligence review" and that his "status will continue to be reviewed on a weekly basis." The government submitted a letter to this court *ex parte* and under seal, for security reasons articulated therein, setting forth the reasons for Khan's administrative detention in the SHU.

The Code of Federal Regulations state that an inmate placed in administrative detention should normally receive a written copy of the placement decision and the reasons therefore, *"[p]rovided institutional security is not compromised."* 28 C.F.R. § 541.22(c)(1) (emphasis added). While the court certainly understands Defendant's desire to receive more information concerning the reasons for his administrative detention, this court is satisfied, based on its examination of the government's *ex parte* submission, that legitimate security concerns limit the ability of the government and prison personnel to disclose the reasons for Defendant's administrative detention in greater detail. Most importantly, the court finds that these institutional security concerns justify Defendant's placement in the SHU. (*See, infra*, § II.C.2.)

However, the fact that Defendant is not privy to all of the details concerning his detention does not automatically imply that any administrative appeal he may take from a denial of his request to be placed in general population would be fu-

tile. To the contrary, it is precisely through the administrative appeals process that Defendant's concerns will be properly aired and considered by Bureau of Prison administrators, at various levels, who are best situated to evaluate Defendant's complaint. This court presumes that the proper prison administrators will exercise fair judgment in each case coming before them, regardless of whether an inmate has unfettered access to all of the information considered by those conducting the review. If the inmate feels the decision was unfairly meted out, his or her recourse is to appeal that decision to the next administrative level, and, if still dissatisfied with the result at the end of the administrative appeals process, he or she may, at that time, pursue the complaint in federal court. It would defeat the purpose of administrative review were this court to permit every inmate who was dissatisfied with a denial of relief mid-way through the administrative appeals process to seek judicial review on the ground of futility.

■ Defendant further challenges the administrative appeals process as futile because he claims that, prior to filing the BP–8 form submitted here as Exhibit B to the Reply Affirmation, he lodged numerous written and oral complaints, inquiring into the reason for his placement in the SHU. He alleges that he did not receive any response and was never provided with BP–8 or BP–9 grievance forms.[6] However, the court already addressed this issue during a status conference held February 26, 2007, acknowledging that the Bureau of Prison's response to Defendant's oral and written complaints prior to that date appeared unduly delayed and directing the Bureau of Prisons to provide Defendant with a BP–9 form. The Bureau did provide Defendant with the appropriate forms, and Defendant has now filed a BP–8 form and a BP–9 form.

Khan has only just begun to avail himself of his administrative remedies. The fact that he may have submitted numerous oral and written complaints over a brief period of time without adequate response

---

**6.** Defendant also claims that he should be excused from the exhaustion requirement on these facts because he made a "reasonable attempt" to exhaust his administrative remedies, citing *O'Connor v. Featherston,* 01 Civ. 3251(HB), 2002 WL 818085, 2002 U.S. Dist. LEXIS 7570 (S.D.N.Y. Apr. 29, 2002). *O'Connor* states that "an inmate makes a 'reasonable attempt' to exhaust his administrative remedies[ ] especially where it is alleged that corrections officers failed to file the inmate's grievances or otherwise impeded or prevented his efforts." *O'Connor,* 2002 WL 818085, *2, 2002 U.S. Dist. LEXIS 7570, at *5 (citations omitted). In *O'Connor,* the petitioner claimed that corrections officers beat him with excessive force in violation of the Eighth Amendment. *Id.,* 2002 WL 818085, *1, 2002 U.S. Dist. LEXIS 7570 at * 1. Following the incident, he was placed in "medical restriction" for fourteen days, the same period of time required to file a grievance, which the court observed was "perhaps more than a coincidence," and during which period he was refused a grievance form despite re-

peated requests. *Id.,* 2002 WL 818085, **2–3, 2002 U.S. Dist. LEXIS 7570 at *7–8. Upon release from medical restriction, O'Connor apparently filed a late grievance and, over the space of four months, made a Freedom of Information Act request in writing for the records relating to the incident and wrote several inquiries and letters to various divisions within the Department of Corrections, most of which went unanswered. *Id.,* 2002 WL 818085, *3, 2002 U.S. Dist. LEXIS 7570 at *8–9. O'Connor finally brought his action to the court nearly nine months after he filed his original grievance. *Id.,* 2002 WL 818085, *3, 2002 U.S. Dist. LEXIS 7570 at *9. In the case currently before this court, as stated above, Khan allegedly made numerous written and oral complaints with various local prison personnel over the space of two-to-three weeks before bringing this action a week later. Defendant can hardly be said to have made a reasonable attempt to exhaust all administrative remedies under the *O'Connor* standard.

does not by itself demonstrate the futility of the administrative appeals process. *Indelicato v. Suarez*, 207 F.Supp.2d 216, 219 (S.D.N.Y.2002) ("Denial of forms ... does not itself constitute a denial of remedies.") If, however, the Bureau had, despite this court's order, persisted in its failure to provide Defendant with the appropriate forms and deliberately prevented Defendant from availing himself of administrative review altogether, Defendant would then have been justified in bypassing the administrative appeals process as futile and bringing his complaint directly to the court. This, however, was not the case.

 To the extent that Defendant's current motion is in response to a perceived delay in the Bureau's response to Defendant's filing of a BP–9 form, Defendant's application to this court is still premature. The Administrative Remedy Program provides that, once an inmate properly files a BP–9 form, for non-emergency requests such as Defendant's, "response shall be made by the Warden or CCM within 20 calendar days." *See* 28 CFR § 542.18. The Administrative Remedy Program further provides for, upon written notice to the inmate, a twenty-day time extension of the response period if necessary but, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.* In the absence of the Bureau's response within the appropriate time frame, therefore, Defendant's recourse is still to appeal to the next level, not to seek intervention by this court. *See George*, 2007 WL 1686321, *3, 2007 U.S. Dist. LEXIS 42640, at * 14–15. Defendant filed his BP–9 on March 1, 2007, and by March 13, the date Defendant filed his Reply Affirmation, the Bureau's allotted twenty-day response period had not yet expired. Defendant is directed to allow the Bureau adequate time to respond, as provided for under the Ad-

ministrative Remedy Program, and, if the Bureau fails to respond within the allotted time period, Defendant should construe the lack of response as a denial and take his appeal to the next administrative level.

**2. Due Process**

 Defendant claims that the Bureau of Prisons has violated his Fifth Amendment due process rights by placing him in administrative detention, apparently arguing that exhaustion is unnecessary in light of the alleged constitutional violation. Whether Defendant's due process rights have been violated depends on whether administrative detention was imposed as "punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell v. Wolfish*, 441 U.S. 520, 538, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); *U.S. v. Gotti*, 755 F.Supp. 1159, 1164 (E.D.N.Y.1991). Where administrative detention is imposed based on the nature of the charges against an inmate, such detention is punitive. *Gotti*, 755 F.Supp. at 1164. If there is no evidence of punishment, the question then becomes whether "the restriction is 'reasonably related' to a legitimate objective or constitutes an exaggerated response." *Basciano*, 369 F.Supp.2d at 350. In evaluating this question, courts "must give due deference to the expertise of corrections officials in operating their institutions in a manageable fashion." *Gotti*, 755 F.Supp. at 1164; *see also Bell*, 441 U.S. at 540 n. 23, 99 S.Ct. 1861.

 The Code of Federal Regulations on Inmate Discipline and Special Housing Units states that "[t]he Warden may ... place an inmate in administrative detention when the inmate's continued presence in the general population poses a serious threat to life, property, self, staff, other inmates or to the security or orderly running of the institution and when the in-

mate ... (4) [i]s pending investigation or trial for a criminal act." 28 C.F.R. § 541.22. As stated earlier, for security reasons, the government submitted under seal an articulation of the reasons for Defendant's placement in administrative detention. This court, based on the facts set forth in the government's sealed submission, is satisfied that Defendant's placement in administrative detention was not punitive, but rather based upon legitimate institutional security concerns. The placement was not due solely to the nature of the charges against Defendant, as was the case in *Gotti*, where the court ordered the petitioners' release from administrative detention. *See Gotti*, 755 F.Supp. at 1165. Moreover, this court is also satisfied that Defendant's current placement in administrative detention is reasonably related to the legitimate government objective, as articulated in 28 C.F.R. § 541.22, of maintaining the orderly and secure operation of the MCC, as well as protecting the safety of staff, inmates, and the public. Accordingly, there is no clear violation of a constitutional or statutory right that would excuse Defendant from the exhaustion requirement.[7]

■ However, the court cautions the Bureau of Prisons to proceed in accordance with its own procedures, as set forth in 28 C.F.R. § 541.22(c)(1),[8] for determining, on an ongoing basis, whether Defendant's detention in the SHU continues to be necessary. The Code of Federal Regulations makes clear that "[a]dministrative detention is to be used only for short periods of time except where an inmate needs long-term protection ... or where there are exceptional circumstances ordinarily tied to security or complex investigative concerns." 28 C.F.R. § 541.22(c). For the indefinite detention of a pretrial detainee, there must be substantial proof justifying the need for such placement, and the Bureau would be well advised to keep this high standard in mind when conduct-

7. Defendant also objects to restrictions placed on attorney telephone calls in the SHU where he is currently housed. Defendant states that he is permitted "one (1) telephone call a month, and no attorney's calls (unmonitored)," but is permitted "liberal visitation by counsel." (Khan Aff. ¶ 17.) The government asserts that there is "no restriction on the length or number of legal visits permitted in SHU" and that "[d]efense counsel may visit the Defendant seven days a week from 8:00 a.m. to 8:00 p.m." (Government's Memorandum at 15. The court notes that the government cites to "Mason Affirm. ¶ 5" in support of these statements, but Mason's affirmation does not provide support for the statements. However, Defendant did not object in his reply papers, and the statements comport with Defendant's acknowledgment that he is permitted "liberal visitation by counsel.") It is well settled that corrections officers may "restrict inmates' access to counsel by telephone as long as the inmates have some other avenue of access." *E.g.*, *Beyah v. Putman*, 885 F.Supp. 371, 374 (N.D.N.Y.1995) (citation omitted). The fact that such restrictions may be inconvenient to an inmate is not determinative; "[c]onvenience is not a right of constitutional magnitude." *Ishaaq v. Compton*, 900 F.Supp. 935, 941 (W.D.Tenn.1995).

8. The Code of Federal Regulations provides for the following procedural safeguards for an inmate placed in administrative detention: (1) a record review by the segregation review official ("SRO") within three work days of the inmate's placement in administrative detention, (2) a hearing for the formal review of the status of each inmate who spends seven continuous days in administrative detention, and thereafter a weekly record review (in the inmate's absence), and (3) a hearing for the formal review of the inmate's status at least every thirty days (with the inmate present unless the inmate waives this right in writing). In addition, corrections staff must conduct a psychiatric or psychological assessment, including a personal interview, when administrative detention continues beyond 30 days, as well as similar psychiatric or psychological assessments and reports at subsequent one-month intervals. 28 C.F.R. § 541.22(c)(1).

ing its periodic reviews of Defendant's status. *See Basciano,* 369 F.Supp.2d at 351–52.

Defendant has failed to provide any justifiable reason for this court to excuse his failure to exhaust his administrative remedies.

### III. Conclusion

For the foregoing reasons, Defendant's motion for release from administrative detention is denied without prejudice to renew once he has exhausted all administrative remedies.

SO ORDERED.