**LYONS, James, Appellant,**

v.

**U.S. MARSHALS;  Carlson, Norman, Director;  Unknown Defendants.**

No. 87–5421.

United States Court of Appeals,
Third Circuit.

Argued Oct. 6, 1987.

Decided Feb. 29, 1988.

George E. Schumacher, Federal Public Defender, James V. Wade (argued), First Asst. Federal Public Defender, Harrisburg, Pa., for appellant.

James J. West, U.S. Atty., Timothy B. Haney (argued), Asst. U.S. Atty., Harrisburg, Pa., for appellees.

Before WEIS and STAPLETON, Circuit Judges, and COHILL, District Judge [*].

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

Appellant James Lyons instituted this suit while he was a pretrial detainee at the United States Penitentiary at Lewisburg, Pennsylvania (Lewisburg). The suit, brought under the authority of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), seeks damages and injunctive relief for the transfer of Lyons to Lewisburg from a New Hampshire prison, as well as for the conditions faced by Lyons as a pretrial detainee at Lewisburg. The district court granted the defendants' summary judgment motion on the ground that Lyons had failed to exhaust his administrative remedies. We have appellate jurisdiction under 28 U.S.C. § 1291 (1982). Because we find that there are triable issues of fact concerning whether Lyons was excused from satisfying the exhaustion requirement, we will reverse.

## I.

On April 2, 1986, Lyons was arrested in Massachusetts on federal drugs and firearms charges. Lyons was then taken to Rhode Island for arraignment, and on May 2, 1986, was indicted in the United States District Court for the District of Rhode Island. Because of overcrowding in the Rhode Island detention facility, Lyons was transferred to Concord State Prison in New Hampshire as a federal pretrial detainee on July 1, 1986. While imprisoned there, Lyons instituted a civil suit protesting the conditions for pretrial detainees.

On August 25, 1986, Lyons was transferred to the United States Penitentiary in Lewisburg, Pennsylvania. Lyons alleges that this transfer occurred in retaliation for his filing the lawsuit in New Hampshire and for his publicizing the conditions for pretrial detainees in the local newspapers. Lyons remained at Lewisburg for over two months, until November 4, 1986, at which time he was transferred to a Massachusetts facility. Lyons subsequently returned to Lewisburg from November 10 until November 14. Since November 14, 1986, Lyons has not returned to Lewisburg.

Like all other pretrial detainees at Lewisburg, Lyons was classified as an "unsentenced holdover," segregated from the general population of prisoners, and placed in the Special Housing Unit on Administrative Detention status. Lewisburg segregates pretrial detainees from the general prison population for the detainees' own protection, as well as for the security of the institution. The detainees are placed in an administrative detention unit because Lewisburg does not have other segregated facilities designed to house pretrial detainees.

Lyons contends that conditions for pretrial detainees in Lewisburg's Special Housing Unit were unconstitutionally harsh, and in particular, worse than those for sentenced inmates. According to Lyons, he was typically locked in his cell 23 to 24 hours per day. He got a maximum of

[*] Honorable Maurice B. Cohill, Jr., United States District Judge for the Western District of Penn- sylvania, sitting by designation.

three showers and five hours of recreation per week. In addition, Lyons claims he was not allowed to make a telephone call until almost a month after he arrived at Lewisburg, and thereafter was allowed only one other call, which was not successful. Other alleged conditions include insufficient clothes and linens; inadequate law library materials and restricted use of the main prison library; interference with mail and legal materials; restricted allotment of stamps, paper, pens, and envelopes, combined with a prohibition on commissary purchases; inadequate food served in the cell rather than in the prison dining rooms; and inadequate lighting, air, quiet, and space in the cells.

On September 5, 1986, while at Lewisburg, Lyons filed this suit seeking declaratory and injunctive relief and monetary damages for his allegedly unconstitutional conditions of confinement and for his allegedly retaliatory transfer to Lewisburg. The district court granted summary judgment to the defendants on the ground that Lyons had not exhausted his administrative remedies. This timely appeal followed.[1]

### II.

■ We exercise plenary review over grants of summary judgment motions to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could find for the party opposing the motion. *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs.*

*Corp.*, 812 F.2d 141, 144 (3d Cir.1987). We must view all facts in a light most favorable to the party opposing the motion. *Betz Laboratories, Inc. v. Hines*, 647 F.2d 402, 404 (3d Cir.1981).

■ Federal prisoners ordinarily must exhaust available administrative remedies before seeking injunctive relief from conditions of confinement. *Waddell v. Alldredge*, 480 F.2d 1078, 1079 (3d Cir.1973). If a federal prisoner seeks only money damages under *Bivens* for violation of his constitutional rights, exhaustion is not required. *Muhammad v. Carlson*, 739 F.2d 122 (3d Cir.1984). If, however, a prisoner's suit seeks both injunctive relief and damages, the exhaustion requirement ordinarily must still be met. *Veteto v. Miller*, 794 F.2d 98, 100 (3d Cir.1986).

This court has identified several policies underlying the exhaustion requirement:

First, adherence to the doctrine shows appropriate deference to Congress' decision, embodied in statute, that an independent administrative tribunal, and not the courts, should serve as the initial forum for dispute resolution....

Second, the exhaustion doctrine illustrates respect for administrative autonomy by forbidding unnecessary judicial interruption of the administrative process. This autonomy allows the administrative tribunal to exercise its own discretion, apply its own special expertise, and correct its own errors, thereby promoting administrative responsibility and efficiency and minimizing the frequent and deliberate flouting of administrative processes which could weaken the tribunal's effectiveness.

.     .     .     .     .

1. On October 24, 1986, Lyons filed a petition for a writ of habeas corpus, No. 86–5881, making essentially the same claims about conditions for pretrial detainees at Lewisburg that he makes in this case. The district court dismissed the habeas corpus petition on the ground that Lyons had failed to exhaust his administrative remedies. Lyons appealed. This court consolidated the appeals in the two cases and appointed counsel for Lyons in the habeas corpus case. At oral argument, counsel for Lyons candidly acknowledged that a writ of habeas corpus releasing him from the alleged unconstitutional conditions of confinement at Lewisburg would be of no benefit to Lyons because he was no longer incarcerated there. He argued that the *habeas* appeal was not moot, however, because Lyons sought certification of the case as a class action in the district court. Because no class certification had been sought prior to the dismissal of the case by the district court and because the habeas appeal was clearly moot as to Lyons, we dismissed that appeal.

Third, the exhaustion requirement fosters judicial economy both by permitting the administrative tribunal to vindicate a complaining party's rights in the course of its proceedings, thereby obviating judicial intervention, and by encouraging the tribunal to make findings of fact on which courts can later rely in their decisionmaking.

*Republic Indus., Inc. v. Central Pa. Teamsters Pension Fund*, 693 F.2d 290, 293 (3d Cir.1982) (citations and footnote omitted).

■ Consistent with these policies, this court has stated that the exhaustion doctrine is not supposed to preclude judicial relief, but merely postpone the timing of the judicial determination. *Muhammad*, 739 F.2d at 124. Moreover, we have noted several exceptions to the exhaustion requirement. Exhaustion is not required if administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury. *Babcock & Wilcox Co. v. Marshall*, 610 F.2d 1128, 1138 (3d Cir.1979).

In this case, the administrative remedy identified by the defendants as not being exhausted is described in 28 C.F.R. §§ 542.-10–542.16 (1987). First, "[i]nmates shall informally present their complaints to staff, and staff shall attempt to informally resolve any issue before an inmate files a request for Administrative Remedy." *Id.* § 542.13(a). Second, "[i]f an inmate is unable to informally resolve his complaint, he may file a formal written complaint, on the appropriate form, within fifteen (15) calendar days of the date on which the basis of the complaint occurred." *Id.* § 542.13(b). The Warden has fifteen days to respond. *See id.* § 542.14. Finally,

[i]f an inmate is not satisfied with the Warden's response, that response may be appealed on the appropriate form to the Regional Director within twenty (20) calendar days of the date of the Warden's response. If the inmate is not satisfied with the Regional Director's response,

that response may be appealed on the appropriate form to the General Counsel within thirty (30) calendar days from the date of the Regional Director's response. *Id.* § 542.15. The Regional Director and the General Counsel each have thirty days to respond. *See id.* § 542.14.

The defendants introduced the affidavit of Warren Kann, a case manager at Lewisburg, which represents that this administrative remedy is generally available to pretrial inmates. According to Kann, pretrial inmates

may file an administrative remedy appeal if they wish to complain about the conditions of their confinement. Specifically, they may obtain these forms from *any* unit team staff member who tours the Special Housing Unit. Upon receipt of these forms, the inmate may write his complaint on these forms, and, submit these forms to the Administrative Remedy Clerk via institutional mail or, by giving the same to a staff member for delivery to that clerk.

App. at 382–83. Kann also states in his affidavit that "although I have no specific recollection of [Lyons] ever requesting administrative remedy appeal forms from me, I would have provide[d] them to him, had he requested them." App. at 383.

■ Lyons admits in his complaint that he has not exhausted this remedy. App. at 10. Nevertheless, he claims that he has presented sufficient evidence to create a triable issue of fact as to whether this case falls within the exceptions to the exhaustion requirement. We agree. Despite the existence of an administrative remedy, the record contains evidence tending to show that this remedy was inadequate in Lyons' case because: (1) the forms were difficult to obtain; (2) the problems of which Lyons complained, namely his retaliatory transfer to Lewisburg and the utilization of a facility for pretrial detention that was unsuitable for that purpose, were not the kinds of problems that the designated procedure was designed to redress promptly; and (3) a pretrial detainee's status as such is short-lived. If this combination of circumstances were proved, a fact-finder could well con-

clude that it would be unreasonable to expect a pretrial detainee in Lyons' position to be able to secure the necessary forms and then pursue the appeal process far enough up the ladder to obtain relief before losing his status as a pretrial detainee at Lewisburg.

Lyons, in his affidavit opposing defendants' summary judgment motion, introduced letters tending to show that the BP–8 and BP–9 complaint forms were extremely difficult for pretrial detainees to obtain. For example, in a letter to Warden Crandell dated September 17, 1986, Lyons wrote: "I cannot get a *BP 8 or 9* form to save my life. I have written to the *counselors* and the *FAL Unit.* [2] Forget it. No response. How do I get one?" App. at 106. On the same day, Lyons wrote to Norman Carlson, Director of the Bureau of Prisons that "I write to these counselors and I still never get a response. I ask for everything. I went crazy trying to get a BP–8 to complain. Nothing." App. at 101. The affidavit also incorporates a letter dated September 20, 1986, from Lyons to a Lt. Holt, alleged to be in charge of the Special Housing Unit, in which Lyons states that "I have requested BP forms several times with no response, so I will take this route." App. at 112.

The defendants rely heavily on the fact that Lyons received 20 additional stamps at the end of September, 1986 after filing a BP–9. Lyons does admit to filling out BP forms on at least one occasion,[3] but he states in his affidavit that he had to go outside normal channels to get these forms:

On Sept. 24, 1986, I saw a guy walking in the corridor and I caught his attention and he did in fact have some BP–8's, 9's, etc. ..., and he gave me some and couldn't understand why they won't pass them out to inmates. I immediately started filing them. It took me exactly one month just to get them and I had to get them from a guy who had nothing to do with me.

App. at 73.

Moreover, although Lyons acknowledges that Mr. Kann, the case manager, responded to the BP–9 requesting more stamps, Lyons states in his affidavit that he "only got the stamps after he withdrew the BP–9 and was not going to get the stamps unless he withdrew the BP–9. I had no choice but to withdraw it because I had a lot of legal mail to mail out and no other way to do it." App. at 59.[4] We also note that this evidence suggesting that Lyons was ultimately able to obtain a form relates to a period after the filing of this suit.

More importantly, even if the administrative procedure were well suited to providing more stamps to a pretrial detainee (a fact Lyons by no means concedes), there is evidence in the record tending to support the conclusion that the designated procedures would have been ineffective in promptly addressing Lyons' principal allegations: the retaliatory transfer to Lewisburg and Lewisburg's practice of housing pretrial detainees in an administrative detention unit under conditions worse than those for convicted inmates. In addition to the letters tending to show the difficulty in obtaining complaint forms, Lyons introduced letters tending to show that he tried

---

2. "FAL Unit" is the administrative unit in charge of the Special Housing Unit. Lyons includes in his affidavit a letter written to FAL Unit on September 10, 1986, in which Lyons requests BP–8 and BP–9 complaint forms. App. at 98.

3. In addition to the BP form referred to by the defendants and the district court, Lyons tendered a BP–8 form dated September 25, 1986, in which he stated that "BP 8's 9's 10's 11's & 12's should be left on the wing because they are *impossible* to obtain otherwise," and that "[i]t took me 1 month and 1 day to receive these BP–8's!" App. at 118. Lyons received a response to this BP–8 on October 15, 1986. With respect to the BP forms, the response stated

only that "BP 8, 9, 10, 11 are not left on the wing because it is [sic] a controled [sic] document." *Id.*

4. Lyons also includes with this affidavit a copy of the BP–9, dated September 25, 1986, asking for more stamps, and the retraction of the BP–9 on September 29. App. at 121. In addition, Lyons includes a memo from the Administrative Remedy Clerk at Lewisburg, dated November 16, 1986, which stated that she had received only one BP–9 from Lyons and that this form had been withdrawn on the day it was received. App. at 120.

to pursue other administrative channels to complain about conditions for pretrial detainees and to request permission to sign a "waiver of separation" [5] to be placed in the general prison population. These letters include the letters to Warden Crandell, Bureau of Prisons Director Norman Carlson, and Lt. Holt, already discussed, as well as additional letters to Crandell, Warden Edwards, FAL Unit, and SAM Unit (apparently another administrative unit with jurisdiction over the Special Housing Unit).

In response to these letters, Lyons received a memo from Associate Warden Thompson dated September 30, 1986.[6] In the memo, Thompson states that as an unsentenced holdover, Lyons is not permitted to reside in the general prison population for security reasons. In addition, the memo acknowledges that "[s]ince unsentenced holdovers are usually assigned to Lewisburg for relatively short periods of time, the services normally provided are not as extensive as those provided to the general population." App. at 99.

Thus, the institution's response to Lyons' complaint regarding the living conditions of pretrial detainees was a statement that Lyons was being treated in accordance with established Lewisburg policy for all pretrial inmates. This statement and, indeed, the briefing of the defendants before us, tends to support Lyons' contention that a remedy for the problem he allegedly faced was available, if at all, somewhere above the institutional level. If, as Lyons claims, Lewisburg is not equipped either to protect pretrial detainees in the general prison population or to provide satisfactory segregated facilities, it is reasonable to expect that the problem can be effectively addressed, if at all, only in the latter stages of the designated administrative process. Similarly, we think it is also a fair infer-

ence that Lyons' request that his allegedly retaliatory transfer be rescinded was not something that could be dealt with by the management of Lewisburg. These facts are important in light of the limited time available to a detainee for pursuing administrative remedies.

Under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1) (1982), a defendant in a criminal case in the United States courts must be tried within 70 days of indictment. While the Act provides for certain "excludeable time," such a defendant can ordinarily expect to be tried within a reasonably short period. When Lyons was initially exposed to conditions at Lewisburg, over three and a half months had elapsed since the filing of the indictment against him. The current record does not disclose whether a trial date had been set as of that time, but it is likely that Lyons did not expect to remain a pretrial detainee at Lewisburg for any extended period of time.

Because Lyons, on arrival at Lewisburg in the summer of 1986, may have been facing a relatively short period as a pretrial detainee there, because the problems about which he complained were ones that could be addressed, if at all, in the latter stages of the administrative process, and because he may reasonably have believed that he would be unable to secure timely access to that process, we are unwilling to hold as a matter of law that Lyons was barred from seeking judicial relief when he filed his complaint on September 5, 1986.

### III.

Because Lyons has demonstrated that issues of fact exist concerning whether an exception to the requirement of exhaustion of administrative remedies applies, we will remand this case to the district court for further proceedings not inconsistent with this opinion. On remand, we recommend

---

5. The Bureau of Prisons regulations concerning pretrial inmates include several provisions allowing a pretrial inmate to participate in various activities with convicted inmates if they sign a "waiver of separation, and when consistent with institution security and good order." 28 C.F.R. §§ 551.110(a) (religious programs), 551.112(b) (education), 551.113(a) (counseling), 551.115(a) (recreation) (1987).

6. Another response came from Associate Warden Crabtree concerning Lyons' complaint about inadequate facilities in the Special Housing Unit library. The memo, dated September 11, 1986, states: "As a result of an audit of available materials in the Special Housing Unit it has been determined that several books need to be added to the library and have been placed on order." App. at 90.

that the district court appoint counsel for Lyons pursuant to its authority under the *in forma pauperis* statute, 28 U.S.C. § 1915(d) (1982) and *Ray v. Robinson,* 640 F.2d 474 (3d Cir.1981).[7]

---

7. The Court commends James V. Wade of the Federal Public Defender's Office in Harrisburg for his able representation of Lyons in his habeas corpus appeal. Much as we would like to appoint him to represent Lyons on remand in this case, we are doubtful of our authority to do so. The Criminal Justice Act does not include *Bivens* actions among the cases in which a court is entitled to appoint a Federal Public Defender. *See* 18 U.S.C. § 3006A(a) (Supp. IV 1986). Although at least one court of appeals has used a Federal Public Defender to represent state pris-

oners in § 1983 suits, *see Henriksen v. Bentley,* 644 F.2d 852 (10th Cir.1981); *Smart v. Villar,* 547 F.2d 112 (10th Cir.1976), the Guidelines for Federal Public Defenders express the opinion that Federal Public Defenders may not be used in such a capacity. We do not propose to resolve this issue here. We expect and anticipate that the district court will be able to secure competent counsel for Lyons and that Mr. Wade will fully cooperate with whomever the court ultimately appoints.