**Boris GOLDBERG, Petitioner,**

v.

**Art BEELER, Warden, FCI Fort Dix, Respondent.**

**Civil Action No. 98–1741(JBS).**

United States District Court, D. New Jersey.

Nov. 24, 1999.

---

Boris Goldberg, Fort Dix, NJ, pro se.

Robert L. Cleary, Acting U.S. Attorney by Dorothy Donnelly, Assistant U.S. Attorney, Trenton, NJ, for Respondent.

**OPINION**

SIMANDLE, District Judge.

This matter is before the court on application of petitioner Boris Goldberg for writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his petition, Goldberg claims that his due process rights have been violated. The U.S. Parole Commission (the "Commission") has allegedly relied upon an erroneous presentence report in calculating his minimum length of sentence. This Court will first determine whether petitioner has failed to exhaust available administrative remedies before mounting the challenge to the Commission's decision. Reaching the merits, the principle issue is whether the decision of the U.S. Parole Commission denying Golberg's release from confinement is based on criteria that are appropriate, rational and consistent with the law. For reasons explained below, the Court finds that petitioner has exhausted available administrative remedies and that this petition will be denied in its entirety upon the merits.

## I. BACKGROUND

Petitioner is presently incarcerated at FCI Fort Dix serving a pre-guidelines sentence of 15 years incarceration imposed by the U.S. District Court for the Eastern District of New York following his plea of guilty to one count of RICO conspiracy. The relevant background facts are as follows.

### A. Petitioner's Conviction and Judicial Appeals

After being arrested on RICO Conspiracy charges on September 17, 1991, petitioner accepted the U.S. Attorney's plea-bargain offer to plead guilty to one count of RICO conspiracy in violation of 18 U.S.C. § 1962(d), a Class C Felony with a maximum penalty of twenty years imprisonment, in return for a dismissal of all other counts in the indictment.

The plea agreement left open the length of sentence to the sentencing judge's discretion, and a presentence investigation report ("PSIR") was ordered. On July 28, 1992, the U.S. Probation Department issued a PSIR outlining the foundations for the RICO charge, which included, *inter alia,* allegations of murder, attempted murder, racketeering, and robbery. The presentence report did not make any specific recommendations as to length of sentence. Soon after the PSIR was issued, the Parole Commission issued on September 25, 1992 a Parole Guideline Estimate Worksheet that estimated that petitioner would have to serve 100+ months before being eligible for parole.[1] On October 13,

---

1. This Guideline Estimate Worksheet included what now appears to be a clerical error: while it correctly stated that the underlying RICO offense involved allegations of murder, the Guideline Worksheet erroneously stated that the murdered crime rival was Ilia Goldstein, who apparently is still alive. Upon review of the PSIR, it is evident that instead the FBI believed it to be Goldberg's rival Evsie Agron who was murdered. Irrespective of the Guideline Estimate Worksheet's error, however, there is no evidence that this work-

1992, after a review of the PSIR and after hearing all the relevant evidence, the trial judge imposed upon petitioner the current fifteen year sentence, plus a $250,000 fine and a $50 dollar special assessment.

Petitioner appealed his sentence, arguing that the district court violated his due process rights by improperly relying on hearsay testimony about his involvement with a murder and three attempted murders in determining that he should be sentenced as the leader of the charged criminal enterprise. In an unpublished decision, the Second Circuit affirmed petitioner's sentence. *United States v. Goldberg*, 996 F.2d 301 (2d Cir.1993).

Petitioner then filed a motion to vacate, set aside or correct his sentence under 28 U.S.C. § 2255 before the sentencing court. Petitioner claimed: (1) that the sentencing court erred in not accurately advising him of the maximum possible penalty; (2) that the sentencing court erred by failing to consider the factual basis of his guilty plea and by failing to advise petitioner of his right to withdraw his plea if the court chose not to accept his plea agreement; and (3) that he received ineffective assistance of counsel during the guilty plea and sentencing phases of his criminal case. The sentencing court found no merit in petitioner's contentions and denied the motion. *Goldberg v. United States*, 1995 WL 87304 (E.D.N.Y. Feb.15, 1995). The sentencing court also denied petitioner's motion for reconsideration. *Goldberg v. United States*, 1995 WL 228382 (E.D.N.Y. April 11, 1995).

Petitioner then appealed the sentencing court's denial of his § 2255 petition. On appeal, petitioner argued that he received ineffective assistance of counsel at his sentencing and that the sentencing court erred (1) in failing to determine whether

he was able to pay the fine imposed as part of his sentence, (2) in not ordering an evidentiary hearing to consider whether he was able to pay the fine or whether a new presentence report was warranted, and (3) in denying his motion for a new presentence investigative interview and presentence report as the present report included unreliable hearsay. In an unpublished decision, the Second Circuit rejected each claim, specifically noting that Goldberg's attorney had challenged the credibility of the hearsay witnesses at the presentence hearing, and affirmed the sentencing court's denial of petitioner's § 2255 motion. *Goldberg v. United States*, 100 F.3d 941, 1996 WL 10104 (2d Cir.1996).

### B. *Petitioner's Administrative Appeals*

In the period during which Goldberg was pursuing judicial appeals of his sentence, the Parole Commission held hearings to officially determine the point at which Goldberg would be eligible for parole. To this end, the Commission conducted an initial parole hearing for petitioner on December 6, 1994. (Resp't's Ex. 3.) In its report dated December 27, 1994, the Commission assessed Goldberg's "salient factor score" at nine (9), placing him in the lowest category of risk for parole violation, but rated the severity of his offense as Category Eight (8) based on its finding that, as detailed in the PSIR, in the course of committing the underlying RICO offense, Goldberg had conspired to commit the murder of rivals Ilia Goldstein and Evsie Agron. *Id.* This combination of salient factors and offense severity yielded a parole guideline range of 100+ months to be served prior to release. *See* 28 C.F.R. § 2.20 (1992), Guidelines for Deci-

---

sheet was relied upon by the sentencing judge. Moreover, as explained below, in the final decision of the Commission's Appeals Board—which is under review herein—the Appeals Board recognized the mistake as to Goldstein and did not rely upon it. Instead, the Appeals Board correctly noted that there

was sufficient evidence that petitioner Goldberg has been involved in arranging the attempted murders of Robert Ferrante and Paul Krupa and the completed murder of Evsie Agron. Thus, the earlier mistaken references to Goldstein are immaterial to the decision under review.

sion–Making.[2] Pursuant to these findings, the Commission ordered that Goldberg serve approximately 107 months, making Goldberg eligible for parole in approximately September 2000. (Notice of Action, Resp't's Ex. 4 at 3.)

After his parole hearing, Goldberg twice petitioned the U.S. Probation Department to amend his PSIR to reduce his offense level downward from Category Eight. Both requests were denied. In a June 20, 1996 letter sent to Goldberg's FCI Fort Dix Correctional Counselor, Joseph Kalinowski, the probation department stated that it would not consider a defendant's objection to a PSIR once the defendant had been sentenced. Apparently, this was also the position taken by the Probation Department in a March 3, 1995 letter written to Goldberg by Probation Officer Kearns. (*See* June 20, 1996 Ltr. of Juanita Basnight, Asst. Dep. Chief U.S. Probation Officer, Presentence Division, Pet'r's Ex. D (noting previous correspondence with Goldberg)).

On December 12, 1996, the Commission conducted a Statutory Interim Hearing ("SIH") for Goldberg. (Resp't's Ex. 5.) The SIH panel began its report on this hearing by stating that Goldberg is "considered a more serious risk than reflected by the SFS based on his instant federal offense." Stated another way, the SIH panel questioned the initial parole panel's decision to rate Goldberg as presenting a very low risk of parole violation. The report also noted that at the SIH hearing, Goldberg argued that the PSIR upon which the Commission based his term of imprisonment was erroneous because he was not involved in a conspiracy to murder anyone nor did he commit any murders. As support, Goldberg referred to a Sep-

tember 22, 1995 letter from AUSA William Gurin sent to Goldberg's trial judge, the Honorable. Eugene Nickerson, U.S. District Judge for the Eastern District of New York, in which Gurin indicated that Ilia Goldstein, whom the September 1992 Parole Guideline Estimate Worksheet listed as murdered, was in fact alive. As the AUSA admits that Goldstein is still alive, Goldberg argued to the SIH panel, the Commission's decision to rate his offense as a Level Eight was in error. Dismissing this argument, the SIH panel stated that, even assuming that Goldstein is alive, it nonetheless believed Goldberg to have been involved with the attempted murder of several individuals, along with other acts of conspiracy. Based on this finding, the panel found, the Commission's initial finding of a Category Eight offense level was correct. (*Id.* at 2.)

On January 16, 1997, Goldberg filed an appeal to the Commission's National Appeals Board, again challenging the offense severity rating of Category Eight, on the basis that he could not be held responsible for the murder of Ilia Goldstein because Goldstein is still alive. (Resp't's Ex. 7.) The National Appeals Board rejected Goldberg's request to amend his PSIR, and affirmed the SIH panel's finding of a Category Eight offense. The Appeals Board found that, even accepting that Goldberg had nothing to do with the attempt on Goldstein's life, the offense level was still correct because the PSIR contained information that Goldberg arranged the attempted murders of Robert Ferrante and Paul Krupa, and directed the successful murder of Evsie Agron. Any one of the PSIR's allegations related to Ferrante, Agron, or Krupa, the Board held, would justify the Category Eight severity rating

---

**2.** The Commission had at the time of Goldberg's sentencing established guidelines for parole decision-making which are set out in table form in 28 C.F.R. § 2.20. The guidelines indicate the customary range of time to be served before a prisoner's release and are computed on the basis of two variables: (1) the severity of the offense; and (2) the salient factor score—or parole prognosis—which makes a prognosis as to an offender's risk of parole violation. The regulations provide that the guidelines are just that and if "the circumstances warrant, decision outside of the guidelines (either above or below) may be rendered." 28 C.F.R. § 2.20(c) (1992).

and parole ineligibility until 107 months had been served. Moreover, the Board noted, Goldberg's then-pending § 2255 action is not a reason to re-open the case, but if the court were to issue a decision bearing on the parole determination, Goldberg would then be free to request a reopening under 28 C.F.R. § 2.28(a). The Board concluded by noting that "[a]ll decisions of the National Appeals Board are final." (U.S. Parole Commission, Notice of Action on Appeal, Pet'r's Ex. D.)

Despite having been finally denied relief by the National Appeals Board, Goldberg continued to file BOP forms contesting the propriety of the Commission's decision to base his parole guidelines on the PSIR. As far as can be discerned from the materials appended to Goldberg's Brief, the first of these challenges happened on May 29, 1997, when petitioner filed an "Informal Resolution Form" (BOP form # 9), complaining to his Correctional Counselors that the FCI Fort Dix Unit team should be using a different parole guideline sheet to calculate his parole eligibility. Based on handwritten notes at the bottom of this form, it seems that petitioner's counselors advised him to instead file a formal BOP complaint, a form of which was provided to Goldberg. Next, Goldberg filed a June 24, 1997,"Request for Administrative Remedy" (BOP form # 229(13)), asking that his PSIR "be corrected to accurately reflect the facts." This request was rejected on June 27, 1997 on the grounds that requests concerning a PSIR should be made to the probation office, a remedy which, as discussed above, Goldberg had already pursued. Next, petitioner on July 7, 1997 filed a "Regional Administrative Remedy Appeal" (BOP form # 230(13)) appealing the Administrative Staff's June 27, 1999 refusal to consider his PSIR claim. This Appeal was denied on July 23, 1997 on the grounds that such an appeal first must be submitted at the institution level. Goldberg then filed a "Central Office Administrative Remedy Appeal" on August 26, 1999 (BOP form # 231(13)), again raising the argument that his PSIR severity category was improperly raised by the Probation Department's reference to crimes which he did not commit. This appeal was denied on September 12, 1997, again, on the grounds that such an appeal must be submitted at the institutional level.

## C. *Petitioner's Present § 2241 Motion*

Petitioner filed the present petition under § 2241 in this Court on April 9, 1998, claiming that his due process rights have been violated because his PSIR contains inaccurate information that the Commission has relied upon to deny him parole. In addition to his pending petition, Goldberg has filed three motions with this Court. First, in an Order dated February 23, 1999, the Court denied as unnecessary Goldberg's motion for additional discovery and Court-ordered subpoenas. (*See* Court's Order filed Feb. 23, 1999 at 2.) Second, the Court on May 19, 1999 denied Goldberg's motion for leave to amend his petition, finding no subject matter jurisdiction over the following proposed added grounds: (1) that the inclusion of information in his PSIR regarding his alleged involvement with the murder of Ilia Goldstein violated Rule 32, Fed R.Crim. P.; (2) that the trial court violated his due process rights by relying upon the allegedly inaccurate information in the PSIR at sentencing; (3) that the inclusion of the allegedly false information about his alleged involvement in the alleged murders of Ilia Goldstein and Paul Krupa constitutes an impermissible amendment of the indictment; (4) that the government breached its plea agreement with petitioner by introducing evidence of his alleged involvement in the alleged murders or attempted murders of Paul Krupa and others at sentencing through the presentence report; and (5) that he received ineffective assistance of counsel during the guilty plea and sentencing phases of his criminal case. In denying Goldberg leave to add these grounds, the Court found that the proposed grounds only would be cognizable on a motion to

vacate, set aside or correct Goldberg's sentence under 28 U.S.C. § 2255, and that Goldberg did not fall within the narrow *Dorsainvil* exception to the gatekeeping requirements of § 2255. (*See* Court's Mem. Op. filed May 19, 1999 at 3–9.)

Still pending is petitioner's motion for reconsideration of the Court's February 23, 1999 Order denying Goldberg's request for discovery and court-ordered subpoenas. As the Court will now deny Goldberg's petition on its merits, the pending motion will likewise be denied.

## DISCUSSION

Petitioner brings this petition pursuant to 28 U.S.C. § 2241, claiming that his due process rights have been violated because the Commission has relied upon an erroneous presentence report in calculating his minimum length of sentence. As relief, Goldberg is not requesting release. Rather, he petitions the Court to order the U.S. Probation Department to prepare a new PSIR in which Goldberg can remove the "false accusations which exist in the PSIR which were founded on absolute perjury." (Pet'r's Br. at 3.) After the new PSIR is prepared, Goldberg apparently hopes to be eligible for parole at an earlier date, and to be eligible for programs from which he has been excluded because of his offense level, including (1) a decreased custody level, (2) preferred housing, (3) furlough release, (4) drug rehabilitation, and (5) educational programs. (*Id.*)

As a preliminary matter, it is doubtful that this Court has jurisdiction to order a new PSIR or to provide institutional benefits Goldberg seeks. Most likely, only the sentencing court would have the power to order a new PSIR pursuant to a motion under 28 U.S.C. § 2255. As will be explained below, however, the Court interprets the present petition as a challenge to the Commission's decision to base Goldberg's sentence on what he deems a flawed PSIR rather than a challenge to the PSIR itself. Furthermore, because the Court now will deny the petition on the merits, it will not the reach the merits of Goldberg's application for a new PSIR.

### A. Challenges to Parole Decisions Pursuant to § 2241

Generally, claims attacking the execution of a petitioner's sentence are properly brought under 28 U.S.C. § 2241 while claims attacking the imposition of a sentence are properly brought under § 2255. *United States v. Ferri*, 686 F.2d 147, 158 (3d Cir.1982), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983). A petition brought under § 2241 is appropriate "where petitioner challenges the effect of events 'subsequent' to his sentence." *Gomori v. Arnold*, 533 F.2d 871, 874 (3d Cir.1976), *cert den.*, 429 U.S. 851, 97 S.Ct. 140, 50 L.Ed.2d 125 (1976). The pre-guidelines setting of an inmate's minimum length of sentence necessarily comes after sentencing. Thus, in cases such as this one, where a petitioner challenges a parole decision, § 2241 is the appropriate means of challenging the action. *Benson v. New Jersey State Parole Bd.*, 947 F.Supp. 827, 829–31 (D.N.J.1996). Moreover, this Court has jurisdiction over this § 2241 petition because claims against the U.S. Parole Commission should be brought in the district where the prisoner is confined. *United States v. Kennedy*, 851 F.2d 689, 690 (3d Cir.1988).

### B. Exhaustion Requirement Under § 2241

A threshold question in this case is whether Goldberg has failed to exhaust available administrative remedies. The respondent argues that administrative remedies are still available to petitioner, and that this petition should therefore be dismissed for failure to exhaust until such time as the appropriate agency has had the opportunity to grant or deny him the relief he seeks.

A federal prisoner ordinarily may not challenge a parole decision until he has exhausted all available remedies. *Arias v.*

*United States Parole Commission,* 648 F.2d 196, 199 (3d Cir.1981). The courts have adhered to the exhaustion requirement for three reasons: (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy. Requiring habeas petitioners to satisfy the procedural requirements of the administrative remedy process promotes each of these goals. *Moscato v. Federal Bureau of Prisons,* 98 F.3d 757, 761–62 (1996).

▆ Nevertheless, the exhaustion requirement is not ironclad. The exhaustion requirement is not supposed to preclude judicial relief, but merely to postpone the timing of the judicial determination. Thus, prisoners need not exhaust administrative remedies if such attempts would be futile and nothing would be gained by further delay of judicial determination of the questions presented. *See Rose v. Lundy,* 455 U.S. 509, 516 n. 7, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (exhaustion of state remedies not required where futile); *Gambino v. Morris,* 134 F.3d 156, 171 (Roth, J., Concurring) (exhaustion not required where § 2241 petitioner demonstrates it is futile to appeal to Parole Commission). *Cf. Lyons v. U.S. Marshals,* 840 F.2d 202, 205 (3d Cir.1988) (*Bivens* plaintiff need not exhaust administrative remedies if exhaustion is futile or if actions of agency clearly and unambiguously violate statutory or constitutional rights.)

In this case, respondent has identified two areas in which Goldberg has not exhausted his administrative remedies. First, respondent argues that petitioner has not yet exhausted his remedies with respect to his claim that the Commission should not have heeded the PSIR because it contains falsehoods regarding Agron and Krupa. Second, respondent argues that petitioner has not yet administratively exhausted his request that FCI Fort Dix

staff amend his PSIR to reflect the "true facts", and that before this Court may consider his claims petitioner should first be required to apply to the Commissioner of Parole to re-open his case pursuant to 28 C.F.R. § 2.28.

The basis for respondent's first argument is that, in his administrative appeal, Goldberg only argued that he was not involved in the murder of Ilia Goldstein and thus did not contest his involvement with other acts of violence detailed in the PSIR. Because petitioner now claims that the PSIR is flawed due to errors and falsehoods regarding Agron and Krupa, respondent argues, petitioner must present these new theories to an appropriate agency before this Court can consider the present petition.

Respondent's exhaustion argument is off the mark for several reasons. First, Goldberg's petition on its face does not contest his involvement with the attacks on Agron and Krupa. Rather, he now challenges statements within the PSIR alleging that he was involved with the attempted murder of Paul Ferrante. (Pet'r's Br. at 2.) Second, regardless of whether petitioner's past PSIR arguments were based on errors involving Ferrante, Krupa, Agron or Goldstein, Goldberg has been arguing the same thing to the Commission since his SIH hearing in December 1996: false accusations in his PSIR make it unreliable, and his Due Process rights have been violated by the Commission's reliance thereupon. The Court will not require petitioner to again go through an administrative appeal process simply because he has re-tooled the PSIR issue to focus on his non-involvement with the attack on Ferrante.

The record before the Court shows that after the Commission had determined Goldberg's parole guidelines, he eventually appealed that determination to the Appeals Board. As demonstrated by the Appeals Board's record of decision, the issue before the Appeals Panel was not the reliability of the hearsay evidence linking

Goldberg to the attack on Goldstein, but rather the overall validity of Goldberg's Parole Guidelines. Upon review of the multiple accounts of Goldberg having orchestrated violent attacks on his rivals for the purpose of obtaining a larger share of the New York "extortion market", the Appeals Board found ample evidence to support the Category Eight classification. The Appeals Board's findings showed no inclination to hear new evidence, thus the factual record is now complete. As that agency has already issued a final decision on a complete factual record, and relied on the PSIR in so doing, nothing would be gained by forcing a new round of hearings on this subject. Thus, further administrative appeals would be futile.

Finally, despite Goldberg's continued filing of BOP forms requesting the FCI Fort Dix staff somehow amend his PSIR, there is no indication that the BOP has jurisdiction to counter a final order of the Commission and order a new PSIR. Therefore, nothing would be gained by forcing petitioner to continue jousting at windmills by filing additional appeals for a form of relief that never will be granted.

As to respondent's suggestion that Goldberg has not exhausted his remedies because he has not applied to the Commissioner to re-open the PSIR matter under 28 C.F.R. § 2.28, the Court finds it instructive that, as noted by the Appeals Board, its denial of relief was final, and the only remaining remedy for Goldberg is to apply to the Commissioner for reopening should the sentencing judge make a decision bearing on the parole determination. As there is no suggestion that such a decision has been made, requesting reopening would also futile. In sum, further administrative appeals would be meritless, and would only needlessly delay judicial determination of this petition. The Court therefore deems all aspects of his attack on the Commission's parole decision to be exhausted and will reach the merits.

## C. *Analysis*

Having determined that petitioner's § 2241 motion is exhausted, the Court now turns to a discussion of the merits of Goldberg's claims. The gravamen of petitioner's motion is the same as that presented in his previous administrative and judicial challenges: that the PSIR contained "triple hearsay", is unreliable, and should never have been considered. The Court finds that Goldberg's petition should be construed as a challenge to the Commission's decision to rate his offense as Category Eight severity based on allegations detailed in the PSIR.

When reviewing a parole decision, the Commission's determinations will be upheld so long as there is a rational basis in the record to support the Commission's findings. *Bridge v. United States Parole Comm'n,* 981 F.2d 97, 100 (3d Cir. 1992). The District Court must be satisfied that the Commission has followed criteria that are appropriate, rational, and consistent with its statute and that its decision is neither arbitrary nor capricious nor based on impermissible considerations. *Zannino v. Arnold,* 531 F.2d 687, 691 (3d Cir.1976). Thus, the central issue before the Court is whether there is a rational basis for the Commission's decision to assign Goldberg a Category Eight offense level.

This Court must determine whether the Commission used criteria that are appropriate, rational, and consistent with its statute in determining that Goldberg's offense should be graded at Category Eight. First, it should be noted that the Commission is granted jurisdiction over parole decisions by 28 C.F.R. § 2.20, and 18 U.S.C. §§ 4201–4218. As with any question governed by statute, the starting point will be the statute's particular written text. *See generally, Sutherland, Statutory Construction* §§ 45–47 (5th ed.1991).

The U.S. Parole Commission Offense Severity Index provides that all RICO offenses shall be "graded according to the

underlying offense attempted, but not less than Category Five." 28 C.F.R. § 2.20, Ch. 11, Sub. A (1101). Thus, the Commission did not exceed the maximum sentencing guidelines when setting Goldberg's seriousness at Category Eight. According to the Guidelines for Decision-making, when imposing a Category Eight sentence exceeding 52 months, "the Commission will specify the pertinent case factors upon which it relied in reaching its decision." 28 C.F.R. § 2.20 at n. 1. In its findings, the Commission stated that it based the Category Eight seriousness assessment on Goldberg's involvement with the attempted murders of Ferrante, Agron and Krupa. Thus, the Commission has clearly satisfied § 2.20's specificity requirement, and has not exceeded the maximum allowable sentence for RICO offenses.

The next issue is whether the Commission relied upon acceptable considerations in coming to its decision. The statute governing what considerations the Commission was allowed to consider in assessing Goldberg's RICO offense at Category Eight is governed by 18 U.S.C. §§ 4201–4218 which provides that:

> In making a determination under this chapter (relating to release on parole) the Commission shall consider, if available and relevant:
>
> (1) reports and recommendations which the staff of the facility in which such prisoner is confined may make;
>
> (2) official reports of the prisoner's prior criminal record of earlier probation and parole experiences;
>
> (3) **presentence investigation reports;**
>
> (4) recommendations regarding the prisoner's parole made at the time of sentencing by the sentencing judge;
>
> (5)[3] a statement, which may be presented orally or otherwise, by any victim of the offense for which the prisoner is imprisoned . . . ; and
>
> (5) reports of physical, mental, or psychiatric examination of the offender.

18 U.S.C. § 4207 (emphasis added). *See also* 28 C.F.R. § 2.19.

As the statute provides that presentence reports *shall* be considered, the Commission *must* consider PSIRs when making parole determinations. *See Bridge v. U.S. Parole Comm'n*, 981 F.2d 97, 104 (3d Cir.1992). Furthermore, the Commission is permitted to consider all relevant information within the PSIR, notwithstanding that it is hearsay or that it pertains to unconvicted crimes. *United States ex rel. Goldberg v. Warden*, 622 F.2d 60, 64 (3d Cir.1980). Therefore, the Commission was entitled to consider hearsay regarding Goldberg's involvement with violent attacks on members of rival factions, despite the fact that such allegations were based on hearsay. As set forth in *Goldberg, supra,* so long as the information is relevant, arguments that the information would be inadmissible in court do not preclude the Commission from considering such information and giving it whatever weight it chooses.

After a review of the record and the submissions of the parties, the Court finds that there is a rational, if not overwhelming, basis in the record to support the Commission's rating of Goldberg's offense at level Eight. The PSIR states that in the 1980s the F.B.I. gathered information from informants that Goldberg was the head of a criminal enterprise that regularly committed extortions in California and engaged in racketeering and low level narcotics trafficking in New York City. As a result, the F.B.I. gathered intelligence on approximately 40 crimes that were committed at the direction of Goldberg. (Resp't's Ex. 2 at 2.) Among the crimes allegedly masterminded by Goldberg were the attempted murder-for-hire of Robert Ferrante; the extortion and bombing of the Baja Seafood Company in Los Angeles; the shooting of Goldstein, a racketeer-

---

**3.** Two paragraphs (5) were enacted.

312

ing rival; repeated and eventually successful attempts on the life of Agron, another racketeering rival; cocaine trafficking; armed robberies and burglaries of jewelry stores and furriers in New York and California; the attempted murder of Krupa, a Goldberg associate; insurance fraud; assault; and possession of weapons. (*Id.* at 2–9.)

Based on this abundance of relevant evidence showing that Goldberg was involved in the commission of numerous serious and violent crimes, the Court finds that the Commission had a rational basis for its decision to set the severity level at Category Eight. Further, there is nothing in the record to suggest that the Commission's parole guideline determination of 107 months violated either relevant statutes or regulations.

Finally, this Court will deny petitioner's pending motion for re-argument as moot. This motion urges the Court to reach a different result than it did in its February 23, 1999, Order denying petitioner's motion for discovery and court-ordered subpoenas.

■■■ Although petitioner urges the Court to reconsider and allow the introduction of additional evidence in this case, the rule in such matters is that when a prisoner files a motion pursuant to § 2241, an evidentiary hearing is not mandatory, and the holding of a hearing is left to the discretion of the district court. *See Yohn v. Love,* 76 F.3d 508, 516 n. 12 (3d Cir. 1996); *Tijerina v. Thornburgh,* 884 F.2d 861, 866 (5th Cir.1989) (hearing is not required where only questions of law are involved). The record accumulated over the past decade pertaining to Goldberg's racketeering is more than ample for the adjudication of each of the grounds lying within this Court's jurisdiction.

The Court is satisfied from the record in this case that Goldberg is not entitled to relief under § 2241, even if the Court were to accept Goldberg's version of the facts as true. Because it now denies Goldberg's petition on its merits, and because the Court finds that it has not overlooked any matters that would have resulted in a different decision than that reached in its February 23, 1999 Order, the petitioner's motion for reconsideration will be denied.

### CONCLUSION

For the reasons set forth above, the Court denies petitioner's application for writ of habeas corpus under § 2241, and denies petitioner's pending motion for reconsideration. The accompanying Order is entered.

### ORDER

THIS MATTER having come before the court on the application of petitioner, Boris Goldberg, for writ of habeas corpus pursuant to 28 U.S.C. § 2241, and the court having considered the submissions of the parties, and for the reasons expressed in the accompanying Opinion;

IT IS on this day of November, 1999, hereby

ORDERED that petitioner's application for writ of habeas corpus is **DENIED;** and

IT IS FURTHER ORDERED that petitioner's pending motion for reconsideration of this Court's Order in this case entered on February 23, 1999 is **DENIED.**